DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas which, following a bench trial, found in favor of appellee, Ciralsky and Associates, for the amount it alleged was owed for the purchase of steel. The trial court further ruled in appellee's favor as to appellant Shaw Steel, Inc.'s counterclaim for funds it claimed appellee owed. For the reasons that follow, we affirm the judgment of the trial court.
Appellant raises the following assignments of error:
 "1. The trial court's Findings of Fact and Conclusions of Law are not supported by the record. (Findings of Fact and Conclusions of Law of June 26, 2001; Tab 2)
 "2. The trial court erred in holding that the $13,871.97 owed by Defendant is owed to Ciralsky and Associates, Inc. (Judgment Entry of December 26, 2000; Tab 1)
 "3. The trial court erred in not holding that Ciralsky was acting as an employee and agent for and on behalf of TPSS Acquisition Corporation. (Findings of Fact and Conclusions of Law of June 26, 2001; Tab 2)"
The following facts are relevant to this appeal. On December 20, 1999, appellee filed the complaint in this case claiming breach of contract and unjust enrichment. The complaint alleged that appellant received two shipments of steel coils from appellee yet failed to pay the sum of $13,871.97.
Appellant, on January 19, 2000, filed an answer and counterclaim. The counterclaim alleged that appellee owed appellant a sum of $46,999.33, plus interest, for five purchases of steel and steel coil. Appellee responded to appellant's counterclaim claiming that appellant purchased the steel from Toledo Pickling Steel Sales Acquisition Corporation ("Acquisition Corp.") and not appellee, Ciralsky and Associates.
On August 16, 2000, the trial court denied cross motions for summary judgment. In its opinion and judgment entry, the court found that an issue of fact as to appellee's complaint remained regarding whether appellant received the shipment of steel sold by appellee. An issue of fact also remained relative to appellant's counterclaim and the identity of the business to which appellant sold the steel.
A bench trial commenced on December 8, 2000, and the following evidence was presented. William Ciralsky testified that he purchased Toledo Pickling Steel Sales, Inc. ("TPSS") in 1984. He stated that in January 9, 1999, he sold the company to Consolidated Capital of North America, located in California, and that the new company, a subsidiary of Consolidated Capital, was called Toledo Pickling Steel Acquisition Division of Consolidated Capital. Ciralsky explained that he "stayed on" as a consultant.
Ciralsky testified that in 1995 he began Ciralsky and Associates II, but that it did not actually begin operations until February 1999. Describing operations, Ciralsky stated that the customer usually generates the purchase order and then the company ships and then invoices.
Regarding the transactions that formed the basis of the complaint, Ciralsky stated that appellant sent the August 10, 1999 purchase order to the Ciralsky offices, the order was filled and the steel was shipped. He testified that the purchase order was addressed to Ciralsky and Associates. The invoice was for $4,860.30.
A second purchase order from Shaw Steel, through its president Harry Sulzer, was received in late August 1999. Ciralsky testified that the order was filled and the steel sent. Ciralsky identified the invoice as being dated September 9, 1999, for $9,000.
Ciralsky was questioned regarding the asset purchase agreement between TPSS and Acquisition Corporation. The parties stipulated that under the terms of the noncompete agreement he was an employee of Acquisition Corp. and was to be paid a salary of $250,000.
Ciralsky also testified that his salesman, James Ferguson, had worked for him when he operated TPSS and that for part of 1999, Ferguson worked for Acquisition Corp., then went to work at Ciralsky and Associates. Ferguson was directly involved in the transactions between Ciralsky and Associates and Shaw Steel.
Ferguson testified that he was employed by Acquisition Corp. from January 1999, until approximately June 10, 1999, when he was laid off. Around July 20, 1999, he began working for
Ciralsky and Associates. Ferguson testified that in December 1998 or January 1999 he verbally told Sulzer that Ciralsky had sold TPSS to a West Coast company and that Ciralsky was only a consultant with the new company.
Relative to appellant's counterclaim, Ferguson testified that he was involved in a series of sales from Shaw Steel to Acquisition Corp. The invoices, as testified to, were as follows: April 27, 1999 for a total sum of $8,454.60; June 8, 1999 for a total sum of $6,077.10; June 9, 1999 for a total sum of $7,578.75; June 16, 1999 for a total sum of $8,666.38; and June 21, 1999 for a total sum of $16,222.50. The sales totaled approximately $46,000.
Ferguson also testified that a letter was sent to TPSS's customers notifying them of the ownership change. He admitted that the document testified to had no letterhead or signature and there was no indication that the letter had actually been sent to appellant. Ferguson took no part in its composition or dissemination.
Ferguson testified that in August 1999, after being employed by appellee, he made an offering of steel to Sulzer. He admitted that it was possible that he made similar offers while he was still employed by Acquisition Corp. but that he had verbally specified that he was now with appellee.
Darcy Macpherson next testified that she worked for William Ciralsky at TPSS and, when it was sold, she worked as an office manager for Acquisition Corp. She stated that at the direction of the new president, she typed a letter informing customers of the "changes [that] had occurred and that [they] were moving forward under the new regime." She admitted that she had no evidence that the letter was ever received by appellant.
Macpherson acknowledged that the invoices sent from appellant list TPSS as the seller, not Acquisition Corp. She stated that the date of the invoice would indicate whether it was the old or new company.
Macpherson further testified regarding Acquisition Corp.'s accounts receivable and payable. She stated that Acquisition Corp. owed Shaw Steel $40,000 and Shaw Steel owed Acquisition Corp. $20,000.
Harry Sulzer, the president of Shaw Steel, was appellant's sole witness. He testified that he did not get notice of the change in ownership. Sulzer testified that he first learned that Acquisition Corp. was the entity appellant was doing business with when he received a letter, as an unsecured creditor, from its receiver on August 31, 1999.
Sulzer did note that he was aware in August 1999 that he was buying steel from Ciralsky and Associates. Sulzer further explained:
 "Q: * * *. And you knew in the past when you yourself — that is, your company generated its — its invoices for steel, that you sold to the Acquisition Corporation or Toledo Pickling, that you were dealing with a company known as Toledo Pickling Steel at least as indicated on your own invoices?
"A: Yes.
 "Q: Is there any reference on these invoices that you were dealing with Ciralsky and Associates?
"A: No."
At the conclusion of the testimony exhibits were admitted into evidence and the matter was taken under advisement. On December 27, 2000, the trial court issued its judgment entry granting judgment in favor of appellee. Thereafter, appellant requested that the court issue findings of fact and conclusions of law as to its counterclaim.
In its June 27, 2001 findings of fact and conclusions of law, the court found that William Ciralsky was a consultant/employee of Acquisition Corp. The court further found that appellant purchased steel from appellee and failed to pay.
As to appellant's counterclaim the court found that appellant sold steel to Acquisition Corp. and was aware that it was not dealing with appellee. The court also noted that there was no evidence presented to support appellant's claims that appellee was in any way responsible for the sale of steel to Acquisition Corp.
On appeal, appellant argues in his first assignment of error that the trial court's findings of fact and conclusions of law are not supported by the record. Specifically, appellant disputes the trial court's findings that it sold steel to Acquisition Corp. and that Ciralsky was a consultant/employee of Acquisition Corp.
At the outset we note that in reviewing factual findings of a trial court, the standard of review an appellate court must apply is manifest weight of the evidence. The judgment of a trial court should not be overturned as being against the manifest weight of the evidence if some competent and credible evidence supports that judgment. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279. Factual findings of the trial court are deferred to because the trial court is in a better position "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
Appellant argues that there was no evidence presented at trial demonstrating that appellant knew that it was dealing with Acquisition Corp. when it sold steel. We disagree. At trial, there was testimony that Acquisition Corp. sent a letter to TPSS's customers informing them of the change in ownership. Further, James Ferguson testified that he verbally informed Sulzer of the change of ownership.
Appellant further disputes the trial court's classification of William Ciralsky as a consultant/employee. Appellant would rather have Ciralsky classified solely as an employee. Upon review, we note that there was testimony presented that Ciralsky was a consultant and that he was an employee. The fact that the trial court failed to make a distinction, despite appellant's contention, we feel is of little significance to the merits of this case. Assuming Ciralsky was an employee of Acquisition Corp., we fail to see how this status changes the fact that Acquisition Corp., through James Ferguson, purchased steel from appellant and failed to pay. The record reveals no evidence that William Ciralsky or Ciralsky and Associates had any involvement in the transactions. Since there is some competent, credible evidence supporting the trial court's findings appellant's first assignment is not well-taken.
Appellant's second assignment of error challenges the trial court's holding that appellant owes $13,871.97 to appellee. Appellant contends that it owes the money to Acquisition Corp. and, because Acquisition Corp. has gone into receivership and appellant will likely not be paid for the steel it sold, wishes to offset the $13,871.97 owed.
Upon review of the record, we note that when appellee generated the August 10, 1999 and August 27, 1999 purchase orders Sulzer addressed then to "Ciralsky and Associates." Sulzer further testified:
 "Q: Well, are you telling us that you thought you were dealing with the Acquisition Corporation in August of '99 —
"A: No, I know that —
"Q: — when you purchased steel?
"A: No. I know I was buying that from Ciralsky.
"Q: And Associates?
"A: Yes.
"Q: Because that's what's on here [the invoices]?
"A:. Right, right."
"* * *.
 "Q; I guess one of the principal questions is why didn't you write Toledo Pickling?
 "A: Because I got from it [sic] Jim Ferguson. He said he was with Ciralsky at the time."
Appellant also admits that it received and accepted the steel. Accordingly, because there is some competent credible evidence to support the trial court's findings, appellant's second assignment of error is not well-taken.
Appellant's third and final assignment of error contends that the trial court erroneously failed to find that William Ciralsky was an agent of Acquisition Corp. We agree with appellee's contention that the record is devoid of evidence that Ciralsky was an agent of Acquisition Corp. Moreover, Ferguson, not Ciralsky, was the salesman that appellant dealt with during the transactions. Accordingly, appellant's third assignment of error is not well-taken.
On consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.